UNITED STATES DISTRICT COURT

DISTRICT OF OREGON


JEAN ROCHE,

No. CV 08-1180-MO

Plaintiff,

OPINION AND ORDER

v.

LA CIE, LTD. and LA CIE, S.A.,

Defendants.

**MOSMAN, J.,**

Plaintiff Jean Roche worked as Chief Financial Officer ("CFO") of La Cie, Ltd., the United States subsidiary of a French corporation, La Cie, S.A. (collectively, "La Cie"). After La Cie terminated Mr. Roche's employment on April 16, 2007, Mr. Roche filed this action alleging: (1) employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and Oregon Revised Statute ("ORS") 659A.030; (2) retaliation in violation of ORS 659A.230 ("the whistleblower statute"); and (3) wrongful discharge under common law. La Cie filed a Motion for Summary Judgment (#32), which is now before the Court.

**FACTUAL BACKGROUND**

Mr. Roche, a French citizen, was employed as La Cie, Ltd.'s CFO from 2002 to 2007. He worked in the United States under a H-1B visa sponsored by La Cie. In early 2007, Mr. Roche

survived a round of resignations and layoffs and began assuming some of the tasks that had been performed by departed employees. On March 18, 2007, Mr. Roche spoke to Pierre Van der Elst, General Manager of La Cie S.A. in France, about a possible raise or promotion that would reflect his increased responsibilities. Mr. Van der Elst told Mr. Roche that he would consider Mr. Roche's request. On April 2, 2007, Mr. Van der Elst called Mr. Roche to inform him that he would not be receiving a promotion or raise.

The parties dispute the content of the conversation on April 2, 2007. La Cie claims that Mr. Roche threatened to resign and delay financial reports if he did not receive a raise or promotion. La Cie says that it decided to fire Mr. Roche because he took advantage of a difficult economic situation and tried to blackmail the company into promoting him. Mr. Roche denies threatening to resign or delay financial reports.

On April 5, 2007, Mr. Van der Elst sent Mr. Roche an e-mail in which he "accepted" Mr. Roche's resignation. Mr. Roche replied to Mr. Van der Elst's e-mail on April 5, 2007, stating that Mr. Van der Elst had mischaracterized their April 2 conversation, and he refused to "resign." Mr. Roche filed a complaint with the Oregon Bureau of Labor and Industries ("BOLI") on the same day. Allegedly, La Cie decided to delay Mr. Roche's termination until he testified in a deposition scheduled for April 18, 2007. Mr. Roche was ultimately terminated on April 16, 2007, however, and never sat for the deposition.

Mr. Roche filed this action after his termination. His complaint alleges that La Cie discriminated against him because of his French national origin. Specifically, Mr. Roche claims that La Cie treated him less favorably than similarly situated employees, created a hostile work

environment, and retaliated against him for reporting discriminatory conduct.

Mr. Roche also raises allegations unrelated to discrimination based on his national origin. He claims that he was terminated for refusing to commit perjury in the April 18 deposition and for reporting illegal conduct committed by La Cie executives. These allegations give rise to Mr. Roche's claims under common law and under the whistleblower statute, respectively.

## PROCEDURAL BACKGROUND

Oral argument was held in this case on November 3, 2009. After ninety minutes of oral argument, and for the reasons stated on the record, the Court ruled on La Cie's motion with respect to several of Mr. Roche's claims. The Court granted La Cie summary judgment on Mr. Roche hostile work environment and separation agreement claims under Title VII and ORS 659A.030, but denied summary judgment on Mr. Roche's wrongful discharge claim under common law and his retaliation claim under Title VII and ORS 659A.030. The Court now considers Mr. Roche's disparate treatment claims under Title VII, ORS 659A.030 and his whistleblower retaliation claims under ORS 659A.230. Because the Court allowed supplemental briefing on the issue of a causal link between Mr. Roche's protected activities and his termination, those arguments are also addressed.

For the reasons stated below, I DENY summary judgment with respect to Mr. Roche's disparate treatment claim based on the allegation that he did not receive a salary raise in 2007 because of his French national origin. I GRANT summary judgment with respect to Mr. Roche's other disparate treatment claims and his claim of retaliation under the whistleblower statute. Because I find evidence sufficient to support a causal link between Mr. Roche's protected

activities and his termination, I do not reconsider my earlier decision to DENY summary

judgment on Mr. Roche's retaliation and wrongful termination claims.

**DISCUSSION**

## I.    Summary Judgment Standard

Summary judgment is proper when the "pleadings, the discovery and disclosure materials

on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The court views the

record in a light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 255 (1986).  If the movant initially shows that no genuine issue exists for trial, the

non-movant cannot then rest on the pleadings but must respond with evidence setting forth

"specific facts showing a genuine issue for trial."  Fed.R.Civ.P. 56(e).  The non-moving party has

the "burden of advertising [sic] to 'specific facts showing that there is a genuine issue for trial.' . .

. It is not the district court's job to sift through the record to find admissible evidence in support

of a non-moving party's case."  *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 504 (9th Cir. 1994)

(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  When "the record taken as a whole

could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue

for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation

omitted).

## II.    Disparate Treatment

_____Employment discrimination claims brought in federal court under Oregon law are

analyzed under the same framework as disparate treatment claims brought under federal law.

-4-

*Knox v. City of Portland*, 543 F. Supp. 2d 1238, 1246 n.2 (D. Or. 2008). To establish a prima facie case of disparate treatment under Title VII, Mr. Roche must either offer evidence of the employers' discriminatory intent or show that the employers' facially neutral conduct gives rise to an inference of unlawful discrimination. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003). A inference of discrimination may be presumed if Mr. Roche shows that:  (1) he is a member of a protected class; (2) he was performing his job according to his employer's legitimate expectations; (3) he was subject to an adverse employment action; and (4) similarly situated persons outside of his protected class were treated more favorably. *Id.* at 640 n.5; *Chuang v. Univ. of Cal.*, 225 F.3d 1115, 1123 (9th Cir. 2000). If a plaintiff successfully mounts a prima facie case, the burden of production then shifts to the employer to articulate some legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the employer meets this burden of production, the plaintiff must show that the articulated reason is pretextual. *Id.* at 804.

Mr. Roche claims he has provided evidence for each of the four of the elements required to raise an inference of discrimination: (1) he is a member of a protected class because he is French; (2) he was performing his job according to expectations; (3) he was subject to an adverse employment action in that he was paid a below-market wage, he was not promoted, and he did not receive a raise in salary; and (4) similarly situated non-French persons were treated more favorably in that they were paid higher salaries, were promoted, or received raises.

La Cie has mounted several challenges to Mr. Roche's prima facie case. First, La Cie argues that Mr. Roche could not have been a victim of wage discrimination because he received

steady raises throughout his employment and, at the time he was terminated, enjoyed the highest salary at La Cie, Ltd. Second, La Cie argues that Mr. Roche could not have been promoted because the position he sought did not exist. Third, La Cie argues that Mr. Roche cannot show discrimination through his failure to receive a raise because the other individuals who received raises were not similarly situated.

I find that Mr. Roche has not proven a prima facie case with respect to his wage discrimination claim. Although I find that Mr. Roche has proven a prima facie case with respect to his failure to promote discrimination claim, he has not presented evidence sufficient to show that La Cie's nondiscriminatory reasons are pretextual. I therefore grant La Cie summary judgment on Mr. Roche's wage discrimination and failure to promote claims. I deny La Cie summary judgment with respect Mr. Roche's failure to receive a raise in salary because Mr. Roche has presented sufficient evidence both to establish an inference of disparate treatment and because La Cie's proffered evidence fails to rebut this inference.

### A.   *Wage Discrimination*

Mr. Roche presented direct evidence suggesting that La Cie paid him a lower salary because of his citizenship and immigration status. Without more, this evidence is insufficient to establish a Title VII claim because discrimination based on citizenship or alienage does not amount to a Title VII violation. *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 87 (1973). Title VII only prohibits discrimination based on citizenship "whenever it has the purpose or effect of discriminating on the basis of national origin." *Id.* at 92. In other words, although discrimination based on citizenship does not provide direct evidence of Title VII discrimination, an employer's

conduct would be impermissible if it also gave rise to an inference of disparate treatment or disparate impact based on national origin. Therefore, in order to determine whether La Cie's conduct had "the purpose or effect" of discriminating against him based on his national origin, I evaluate whether Mr. Roche can prove that similarly situated, non-French employees were treated more favorably.

Both parties agree that Melissa Cahill, the La Cie, Ltd. employee who assumed Mr. Roche's position after he was terminated, is a similarly situated employee outside Mr. Roche's protected class. Mr. Roche alleges he was treated less favorably by comparing his starting salary in 2002 to that of Ms. Cahill in 2007. When Mr. Roche joined La Cie in 2002, his salary started at $65,000 per year. When Ms. Cahill assumed Mr. Roche's position in 2007, La Cie paid Ms. Cahill a starting salary of $85,000 per year. Mr. Roche also claims that his credentials were vastly superior to those of Ms. Cahill. He argues that this evidence supports an inference that La Cie paid him a lower salary because he is French.

Whether Mr. Roche's qualifications were vastly superior to Ms. Cahill's, and whether the wage discrepancy is attributable to other factors, such as inflation, are issues of fact. But, even accepting Mr. Roche's factual allegations as true, no reasonable juror could find that Mr. Roche was treated less favorably than Ms. Cahill. Mr. Roche's salary was raised to $90,000 per year in June 2003—less than a year after he joined La Cie. (Roche Decl. (#51) ¶ 26.) In 2004, Mr. Roche's salary was raised again to $94,000 per year (*Id.* ¶ 27.) He continued to receive steady raises in subsequent years. (*See id.* ¶¶ 31, 41.) By the time Mr. Roche was terminated in April 2007, his salary had risen to $104,000 per year. (*Id.* ¶ 92.)

In contrast, La Cie raised Ms. Cahill's salary from $85,000 per year in 2007 to $90,000 per year in 2008—but has frozen her salary ever since. (Supplemental Crouzet Decl. (#63) ¶ 3.). Therefore, the undisputed facts are that Mr. Roche's starting salary in 2002 was $20,000 lower than his successor's starting salary in 2007; that he received a nearly 40% raise in 2003; that he continued to receive steady raises each year he was employed; and that his salary in 2007 was $15,000 higher than his successor's salary that same year.

Mr. Roche's wage discrimination claim is remotely viable but paper thin. When viewed in isolation, and in the light most favorable to Mr. Roche, the $20,000 wage discrepancy between Mr. Roche's 2002 starting salary and Ms. Cahill's 2007 starting salary could support an inference that La Cie treated Ms. Cahill more favorably. But this isolated fact is too fragmentary a snapshot of the whole factual picture. *See Matsushita Elec.*, 475 U.S. at 587 (determining that, when the factual record as a whole makes a claim implausible, a plaintiff "must come forward with more persuasive evidence to support [his] claim than would otherwise be necessary"). When the wage discrepancy is viewed in the context of undisputed facts, such as the $15,000 difference between Mr. Roche's 2007 salary and Ms. Cahill's 2007 salary, his claim becomes untenable. On the record taken as whole, no rational trier of fact could find for Mr. Roche on this claim.

B.      *Promotion*

Mr. Roche has mounted a prima face case with respect to his claims that he was not promoted to the position of Subsidiary Manager because he is French. Under *McDonnell Douglas*, the burden then shifts La Cie to assert a nondiscriminatory reason for refusing to promote Mr. Roche. La Cie has met its burden by presenting evidence that the position Mr.

Roche sought was eliminated for economic and logistical reasons. (Crouzet Decl. (#37) ¶¶ 6, 7.) La Cie S.A. wanted "to gain more control over LaCie Ltd.'s strategy and operations by having LaCie Ltd.'s department managers report directly to their respective functional managers at LaCie S.A. in France." (*Id.* ¶ 7.) According to La Cie, the position of Subsidiary Manager did not exist in 2007 and "still does not exist today." (*Id.* ¶ 17.) Additionally, La Cie's nondiscriminatory explanation is supported by its long history of promoting French individuals to "country manager" positions. (Supplemental Crouzet Decl. (#63) ¶¶ 5-9 (listing at least ten French individuals who have served as country managers from 1999 to present).)

Mr. Roche has presented no direct evidence that La Cie's decision was based on discriminatory animus toward his national origin.[1] Therefore, the viability of Mr. Roche's claim depends on whether he has shown that La Cie's articulated reasons for the adverse actions are pretextual. "To establish that a defendant's nondiscriminatory explanation is a pretext for discrimination, plaintiffs may rely on circumstantial evidence, which we previously have said must be 'specific' and 'substantial' to create a genuine issue of material fact." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029 (9th Cir. 2006).

Although Mr. Roche offers circumstantial evidence of discrimination, this evidence is not sufficient to survive summary judgment. First, he claims that La Cie S.A. executives told him in February 2007 that they would add the equivalent of a Subsidiary Manager position to La Cie

---

[1] As the following analysis demonstrates, Mr. Roche has not carried his burden of showing that La Cie's conduct was a pretext for discrimination based on national origin. Because Mr. Roche's evidence does not support an inference of intentional discrimination based on national origin, I also find that Mr. Roche has not shown that discrimination based on immigration status had "the purpose or effect" of discrimination based on national origin. *See Espinoza*, 414 U.S. at 87, 92.

Ltd. (Roche Decl. (#51) ¶ 55.) Second, Mr. Roche alleges that Mr. Van der Elst "reacted

positively" when Mr. Roche asked to be promoted to the position of Subsidiary Manager. (*Id.* ¶

74.) Third, Mr. Van der Elst allegedly told Mr. Roche that Mr. Roche would not be promoted

because La Cie had "experience in [the] UK with the finance manager being promoted as

Subsidiary Manager, and that was a failure." (Roche Dep. 257:8-12 (Dessault Decl. (#36) Ex. 1))

Because the former UK finance manager was French, Mr. Roche argues that Mr. Van der Elst's

statement is further evidence of La Cie's true discriminatory motivation.

   Mr. Roche has not met his burden to present evidence that La Cie's nondiscriminatory

reasons are pretexts for discrimination. Even accepting as true the allegation that La Cie

considered reviving the Subsidiary Manager position in February 2007, this fact does not raise an

inference that the position was kept vacant in an effort to discriminate against Mr. Roche. The

position remained unavailable long after Mr. Roche was terminated, and remains unavailable

today. Likewise, Mr. Van der Elst's statements are too ambiguous to show that La Cie acted out

of discriminatory animus. *See Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir.

1990) (holding that an employer's statement that he selected another applicant because he was "a

bright, intelligent, knowledgeable young man" was insufficient to establish a prima facie case of

age discrimination). Finally, Mr. Roche's circumstantial evidence must be viewed in the context

of the record as a whole. It is unreasonable to infer from this limited evidence that La Cie

intended to prevent French people from becoming country or subsidiary managers in light of

undisputed evidence that La Cie has promoted at least ten French individuals to those positions

within the last ten years. Therefore, I grant summary judgment on Mr. Roche's failure to promote

claim.

### C.    *Salary Raises*

_____La Cie argues that Mr. Roche has not shown that he is similarly situated to the other employees who received raises in spring 2007.[2] Essentially, La Cie contends that the other managers were not given "raises," they were promoted into vacant executive-level positions and began receiving a salary commensurate with their new positions. (Hr'g Tr. 14:19-18:9, Nov. 3, 2009.) But on this record and viewing the evidence in the light most favorable to Mr. Roche, there is a disputed issue of material fact regarding whether the other management-level employees were merely promoted or given raises.

Even if Mr. Roche's claim supports a prima facie case, however, La Cie's argument may be treated as a nondiscriminatory explanation for the disparate treatment under the *McDonnell Douglas* burden-shifting framework. But the Court must evaluate La Cie's arguments in light of the evidence it presented, rather than explanations offered by counsel at oral argument. La Cie did not present evidence that the other managers received raises because they were promoted into vacant positions. Rather, La Cie presented evidence that changes in La Cie Ltd.'s management team "resulted in many of the remaining managers at La Cie Ltd. receiving increased responsibilities and increased compensation. La Cie S.A. did not offer Plaintiff a raise at this time, because his responsibilities were not expected to increase on a permanent basis." (Crouzet Decl. (#37) ¶¶ 6, 8.)

For purposes of summary judgment, La Cie's nondiscriminatory explanation is

_____

2    "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez*, 349 F.3d at 641.

insufficient. It is undisputed that Mr. Roche assumed greater responsibilities in Spring 2007, at the same time other managers received raises. (Roche Decl. (#51) ¶ 91.) On this record, I am not persuaded by La Cie's nominal distinction between "permanent" and "temporary" increases in responsibility. Because Mr. Roche was fired before his responsibilities ever decreased, the temporary nature of Mr. Roche's additional responsibilities could be attributed to his termination alone. I therefore deny summary judgment with respect to the Title VII and ORS 659A.030 claims premised on Mr. Roche's failure to receive a raise.

III.   **Whistleblower Statute**

Mr. Roche alleges that he was fired because he refused to commit perjury in a deposition, complained about La Cie's violations of the Family Medical Leave Act, and reported instances of money laundering and immigration violations to Human Resources Coordinators at La Cie, Ltd.. La Cie counters that Mr. Roche did not engage in protected activity because he never  actually "blew the whistle" on La Cie's alleged illicit activities by reporting the activities to someone outside of the company.[3] Secondarily, La Cie argues that even if Mr. Roche did engage in protected activity, he has shown no causal connection between his protected activity and his termination. For the reasons stated below, I conclude that Mr. Roche did not engage in protected activity because he did not "report[] criminal activity by any person" within the meaning of the whistleblower statute. *See* ORS 659A.230(1). I therefore grant summary judgment on Mr. Roche's whistleblower claim.

---

[3] Mr. Roche focuses on the protected conduct of reporting criminal activity; he does not allege that he engaged in other conduct protected by the whistleblower statute, such as filing a complaint, cooperating with a criminal investigation or testifying at a civil proceeding or criminal trial.

-12-

A.    *Protected Activity*

1.    **Refusing to Commit Perjury**

As a threshold issue, Mr. Roche's allegation that he was fired for refusing to commit perjury does not support a whistleblower claim. Even if Mr. Roche refused to commit perjury in a deposition, which this Court accepts as true for purposes of summary judgment, Mr. Roche never reported the perjury request to anyone.[4] He simply refused to comply with Ms. Hottier-Fayon's alleged request. (Roche Decl. (#51) ¶ 57) ("I told Ms. Hottier that I would not lie and I thought it would be perjury to hide the information.") The plain text of the whistleblower statute requires a report, a complaint, or cooperation with an investigation or legal proceeding. ORS 659A.230(1). The statute would also protect a person who was fired for testifying truthfully at a civil proceeding or criminal trial, *id.*, but Mr. Roche does not allege that he was fired for testifying truthfully. If an employer retaliates against an employee who refused to comply with an illegal order, that retaliation may give rise to a different cause of action under statute or common law. But a refusal to cooperate with an illegal request, in and of itself, does not qualify as protected conduct and does not give rise to a retaliation claim under the whistleblower statute.

2.    **Internal v. External Reporting**

a)    **Are Internal Reports Protected?**

La Cie argues that Mr. Roche's other whistleblower claims fail because he reported illegal conduct only to La Cie employees, and internal reporting is not protected by the whistleblower

---

[4]  Mr. Roche cites an e-mail in which he "voiced his concern" about committing perjury in his deposition (Roche Decl. (#51) ¶ 79 & Ex. N). In his e-mail, which appears to be a status update, Mr. Roche does not say that he was asked to commit perjury, nor does he express any concern that his testimony would be untruthful. (*See id.*, Ex. N.)

statute. This issue is complicated by a split of authority in this district. This Court previously adopted the Findings and Recommendations of Magistrate Judge Ashmanskas, who observed that "the [whistleblower] statute requires that the report to be made to someone other than the employer" and recommended dismissing plaintiff's whistleblower claims because plaintiff's complaints were made to her supervisors. *Gamez-Morales v. Pac. Nw. Renal Servs. LLC*, Civ. No. CV 05-546-AS, 2006 WL 2850476, *16 (D. Or. Sept. 29, 2006). Judge Haggerty allowed a whistleblower claim to go forward, however, where a plaintiff reported a private company's criminal activity to the company's board of directors. *Darbut v. Three Cities Research, Inc.*, No. CV-06-627-HA, 2007 WL 496353, *3 (D. Or. Feb. 12, 2007).

On more careful reflection, it does not seem that the distinction between external and internal reporting is supported by the plain language of the whistleblower statute. The whistleblower statute itself does not define the term "reported." ORS 659A.230. Unless statutory text is specifically defined, it should be given its ordinary, common meaning. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009). To "report" has a variety of meanings, including "to give an account of"; "to give a formal or official account or statement of"; "to make known to the proper authorities"; or "to make a charge of misconduct against." *Merriam-Webster's Collegiate Dictionary* (11th ed. 2003). None of these definitions requires an external recipient, however.

Next, I look to the legislative purpose of the statute, which is most accurately expressed by the language of the statute itself. *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 164 (1985). The statutory text shows that the "protection provided by the whistleblower statute advances the public policy of encouraging citizens to assist in the enforcement of state and federal laws."

-14-

*Jensen v. Medley*, 11 P.3d 678, 688 (Or. App. 2000), *aff'd in part and rev'd in part*, 82 P.3d 149 (Or. 2003). The whistleblower statute is titled, "Discrimination for initiating or aiding in criminal or civil proceedings." ORS 659A.230(1). And other activities protected by the statute are formal in nature: (1) a written accusation under oath, accepted by a district attorney and filed with a magistrate; (2) cooperation with a law enforcement agency conducting a criminal investigation; and (3) testifying under oath at a civil proceeding or criminal trial. ORS 659A.230; ORS 131.005(3), (4).These are all contexts in which false testimony would carry serious legal consequences and which are designed to initiate legal action or facilitate an existing investigation or proceeding.

Therefore, the word "report," as used in the Oregon whistleblower statute, contemplates some action that is "intended to or likely to result" in a criminal or civil proceeding. *Ransom v. HBE Corp.*, No. 01-36165, 2003 WL 21949158, *2 (9th Cir. Aug. 13, 2003). Although external reports are more likely to meet this criteria than are internal reports, it does not follow that an internal report is necessarily unprotected. Instead, the protected activity analysis should focus on whether, under the specific facts of the case, the complainant's "report" is intended to or likely to result in a criminal or civil proceeding.

### b)    Did Mr. Roche "Report" Illegal Conduct?

Based on the foregoing analysis, the proper inquiry is not whether Mr. Roche's complaints were external or internal but rather whether the complaints were intended to initiate, or likely to initiate, a criminal or civil proceeding. Aside from the perjury allegations, discussed above, Mr. Roche cites several instances in which he reported various kinds of conduct to Human Resources coordinators at La Cie, Ltd. and to Nathalie Crouzet, the worldwide Human

Resources Director for La Cie S.A.. (Roche Decl. (#51) ¶¶ 65, 88, 89, 92.)

A significant problem with Mr. Roche's whistleblower claim, however, is that most of his "reported conduct" is not criminal but rather relates to human resources issues that could "open the company up to [civil] liability." (*Id.* ¶ 88.) Where a person has not filed a formal complaint or cooperated with an investigation or legal proceeding, the whistleblower statute protects only reports of "criminal activity." ORS 659.550(1). Mr. Roche alleges he reported criminal conduct only twice. He reported suspected money laundering and immigration law violations committed by La Cie, S.A.'s CFO once to La Cie Ltd.'s Human Resources Coordinator, Lucille Collins, and once to Ms. Collin's replacement, Catherine Johnson. (Roche Decl. (#51) ¶¶ 65, 89.)

Even viewing the evidence in the light most favorable to Mr. Roche, there is insufficient evidence to conclude that Mr. Roche's conversations with Ms. Collins and Ms. Johnson are protected "reports" within the meaning of the whistleblower statute. If Mr. Roche truly intended these conversations to result in a criminal investigation against La Cie or its CFO, he took one of the most circuitous routes possible to accomplish that goal. Neither Ms. Collins nor Ms. Johnson were in a position to initiate criminal or civil proceedings against their global parent company or their superiors at La Cie, S.A.. Mr. Roche did not ask these women to report his concerns to La Cie, S.A.'s executive management team or board of directors. Furthermore, Mr. Roche never attempted to contact law enforcement or a government agency about his concerns, nor is there any evidence that he asked Ms. Collins or Ms. Johnson to do so on his behalf.

According to Mr. Roche, he chose to approach Ms. Collins and Ms. Johnson with this information because "he could not go [directly] to Nathalie Crouzet, Geraldine Hottier or Pierre Van Der Elst to discuss this." (Roche Decl. (#51) ¶ 65.) Yet, throughout his tenure at La Cie, Mr.

-16-

Roche was in constant communication with La Cie S.A.'s executive management team, including Nathalie Crouzet, Geraldine Hottier, and Pierre Van der Elst. With respect to numerous other subjects, and within the same three-month period, he freely "voiced his concerns" to all three of these individuals (*Id*. ¶¶ 56, 57, 74, 75, 79, 82, 88) (discussing concerns about salary, refusal to commit perjury, exploitation of immigration status, compliance with federal and state regulations, wrongful terminations). Mr. Roche has presented no facts to explain why, on this particular occasion, Mr. Roche could not approach these individuals or other members of La Cie S.A.'s executive management team.

"At summary judgment, this [C]ourt need not draw *all* possible inferences in [plaintiff's] favor, but only all *reasonable* ones." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 n.10 (9th Cir. 2002) (emphasis in original). The only reasonable inference from these facts is that Mr. Roche was, at most, indifferent about whether his concerns about criminal activity would reach La Cie, S.A.'s board of directors, senior management, law enforcement, a government agency, or some other entity in a position to take legal action against La Cie or its CFO. Therefore, because Mr. Roche's conversations were unlikely to initiate civil or criminal proceedings and were not intended to do so, the conversations are not protected activity under the whistleblower statute. For that reason, I grant summary judgment for defendants on Mr. Roche's whistleblower claims.[5]

## IV.    Wrongful Termination and Retaliation Claims

---

[5]  Having found that Mr. Roche did not engage in protected conduct within the meaning of the whistleblower statute, it is unnecessary to consider La Cie's argument that there is no causal link between his conversations with the Human Resources Coordinators and his termination.

At oral argument, the Court denied summary judgment with respect to Mr. Roche's wrongful termination claim under common law and his retaliation claims under Title VII and ORS 659A.030. Because La Cie's supplemental briefing continues to challenge the causal link between Mr. Roche's protected activity and his termination, I will address those arguments briefly here. La Cie argues that Mr. Roche cannot establish a causal link between his refusal to commit perjury and his termination, or between his BOLI complaint and his termination, because there is no evidence that Mr. Van der Elst knew that Mr. Roche refused to commit perjury or that he filed a BOLI complaint.

To survive summary judgment on his wrongful termination and retaliation claims, Mr. Roche "must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity." *See Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) (discussing a causal link in the context of a Title VII retaliation claim). In some circumstances, a causal link may be inferred from timing alone if "an adverse employment action follows on the heels of protected activity." *Villiarimo*, 281 F.3d at 1064-65.

Here, timing supports an inference of causation. Mr. Roche alleges that he refused to commit perjury in late March 2007 (Roche Decl. (#51) ¶ 75) and that he filed a BOLI complaint on April 5, 2007 (*Id.* ¶ 96). On April 16, 2007, he learned that he would be terminated. (*Id.* ¶ 106.) Because Mr. Roche's protected activity occurred within weeks of his termination, a causal link may be presumed for purposes of summary judgment.

I need not decide whether timing alone is sufficient to infer a causal link in this case, however, because Mr. Roche has also presented evidence from which a reasonable juror could

infer that Mr. Van der Elst was aware of Mr. Roche's protected activity.[6] First, Mr. Roche alleges that he told Geraldine Hottier-Fayon, the CFO of La Cie S.A., that he would not commit perjury. It is undisputed that Ms. Hottier-Fayon was also the person who told Mr. Roche that he was terminated—as well as the person who actually sat for the deposition. There is evidence both that Mr. Van der Elst knew Mr. Roche was scheduled to testify in the deposition (Crouzet Decl. (#37) ¶ 13), and that he discussed Mr. Roche's termination with Ms. Hottier-Fayon prior to reaching a decision. (Van der Elst Decl. (#38) ¶ 5.)

Second, Mr. Roche has presented evidence that would allow a fact-finder to infer a causal link between his BOLI complaint and his termination. On April 6, 2009, the day after filing the complaint, Mr. Roche told Catherine Johnson, Human Resources Coordinator for La Cie, Ltd., that he had filed a complaint. (Roche Decl. (#51) ¶ 100.) Ms. Johnson reports to Nathalie Crouzet, Human Resources Director for La Cie S.A. (*id.*), who was involved in the decision to terminate Mr. Roche (Crouzet Decl. (#37) ¶¶ 12-14.)[7] Combined with close proximity between the protected activity and the termination, and viewed in the light most favorable to Mr. Roche, this evidence suggests a causal link sufficient to withstand summary judgment on the wrongful

---

[6] La Cie's argument also assumes that Mr. Van der Elst was the sole decisionmaker with respect to Mr. Roche's termination, which is, itself, a disputed issue of fact. Evidence shows that Mr. Roche's termination was a subject of considerable discussion among La Cie, S.A. executives, which suggests that Mr. Van der Elst did not make the termination decision on his own. (*See, e.g.*, Mark Decl. (#33), Ex. 1 & 2; Crouzet Decl. (#37) ¶¶ 12-15; Van der Elst Decl. (#38) ¶ 5.)

[7] Mr. Roche also alleges that two of his colleagues at La Cie Ltd. told him "that Nathalie Crouzet gathered most of the managers of La Cie Ltd. to brief them about [his BOLI complaint]." (Roche Decl. (#51) ¶ 115.) Although La Cie did not contest this statement in its motion to strike (#58), I note that these statements by colleagues are inadmissible hearsay when offered to prove Ms. Crouzet's knowledge. *See* Fed. R. Evid. 801 & 802. "A supporting or opposing affidavit must . . . set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(e)(1). Therefore, I did not consider this statement in deciding La Cie's motion for summary judgment.

termination and retaliation claims.

## CONCLUSION

For the foregoing reasons, I GRANT IN PART AND DENY IN PART defendants'

Motion for Summary Judgment (#32).


IT IS SO ORDERED.

DATED this  4th  day of December, 2009.


/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court

-20-